2021R00795/AER

**RECEIVED**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

JAN 09 2024

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Tonianne J. Bongiovanni, |
| | : | U.S.M.J. |
| v. | : | |
| | : | Magistrate. No. 24-3001 (TJB) |
| NATHANIEL ANDERSON and | : | |
| CHRISONE D. ANDERSON | : | **CRIMINAL COMPLAINT** |

I, Special Agent Sean Palen, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

**S/Sean Palen**
Sean Palen, Special Agent
Federal Bureau of Investigation

Special Agent Palen attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this _9_th day of January, 2024.

Hon. Tonianne J. Bongiovanni
United States Magistrate Judge

## ATTACHMENT A

## Count 1
### (Conspiracy to Commit Wire Fraud Affecting a Financial Institution)

From on or about March 12, 2015, through on or about June 6, 2017, in the District of New Jersey, and elsewhere, the defendants,

### NATHANIEL ANDERSON and
### CHRISONE D. ANDERSON,

did knowingly and intentionally conspire and agree with one another and others to devise a scheme and artifice to defraud a government sponsored enterprise ("Victim GSE") and a financial institution ("Victim Lender"), and to obtain money and property from Victim GSE and Victim Lender by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1349.

**Count 2**
**(Bank Fraud)**

From in or around October 2015, through on or about April 13, 2016, in Burlington County, in the District of New Jersey, and elsewhere, the defendants,

NATHANIEL ANDERSON and
CHRISONE D. ANDERSON,

did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud a financial institution, namely Victim Lender, and to obtain monies, funds, assets, and other property owned by, and under the custody and control of Victim Lender, by means of materially false and fraudulent pretenses, representations, and promises, and did aid and abet one another in same.

In violation of Title 18, United States Code, Section 1344 and Section 2.

**Counts 3 and 4**
**(False Statement on a Loan Application)**

On or about the dates set forth below, in Burlington County, in the District of New Jersey, and elsewhere, the defendants,

NATHANIEL ANDERSON and
CHRISONE D. ANDERSON,

did knowingly make the following false statements to a financial institution, namely, Victim Lender, for the purpose of influencing in any way the action of Victim Lender upon an application for the mortgage loan described in paragraphs 34 to 44 of this Complaint, and NATHANIEL ANDERSON did aid and abet CHRISONE D. ANDERSON in same:

| Count | Approximate Date | False Statement |
|---|---|---|
| 3 | March 11, 2016 | CHRISONE D. ANDERSON certified in documents submitted to Victim Lender in connection with the mortgage loan application for a property located in Willingboro, New Jersey (the "Property"), that CHRISONE D. ANDERSON did not have a family or business relationship with the seller of the Property. |
| 4 | April 13, 2016 | CHRISONE D. ANDERSON certified in documents submitted to Victim Lender in connection with the mortgage loan application for the Property, that CHRISONE D. ANDERSON would occupy the Property as her principal residence within 60 days after the closing and continue to occupy the Property as her principal residence for at least one year after the date of occupancy. |

In violation of Title 18, United States Code, Section 1014 and Section 2.

- 4 -

## Counts 5 and 6
### (False Statement to a Federal Agent)

On or about May 20, 2022, in Mercer County, in the District of New Jersey, and elsewhere, defendant

### CHRISONE D. ANDERSON

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, as set forth in the table below, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation conducted by the United States Department of Justice and the Federal Bureau of Investigation.

In violation of Title 18, United States Code, Section 1001(a)(2).

| Count | False Statement |
|---|---|
| 5 | CHRISONE D. ANDERSON stated that she did not believe that she had a business relationship with the seller of the Property because she did not consider NATHANIEL ANDERSON to be the seller. |
| 6 | CHRISONE D. ANDERSON stated that during the period that she owned the Property, she considered the Property to be her primary residence and she resided at the Property on weekdays. |

**ATTACHMENT B**

I, Sean Palen, am a Special Agent of the Federal Bureau of Investigation. The information contained in the complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including business records, bank records, and other documents. Because this complaint is being submitted for the limited purpose of establishing probable cause, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. Any dollar amounts referenced herein are approximate.

<u>Defendants and Relevant Individuals and Entities</u>

1.      At all times relevant to this Criminal Complaint:

        a.      Defendant NATHANIEL ANDERSON was an elected official in Willingboro, New Jersey, who resided at a single-family residence in Willingboro (the "Property").

        b.      Defendant CHRISONE D. ANDERSON was a businesswoman who resided in Marlton, New Jersey. At the time of the fraudulent short sale transaction in 2016, described below, CHRISONE D. ANDERSON's legal name was Chrisone Whitehead. Any references in this Attachment to CHRISONE D. ANDERSON executing documents thus refers to CHRISONE D. ANDERSON executing those documents under the name Chrisone Whitehead.

        c.      Bank-1 was a mortgage lending business headquartered in Pennsylvania.

        d.      Bank-2 was a mortgage lending business headquartered in California.

        e.      Bank-3 was a mortgage lending business headquartered in North Carolina.

        f.      Victim GSE was a government sponsored enterprise headquartered in the District of Columbia.

        g.      Victim Lender was a mortgage lending business headquartered in New Jersey.

h.      The Servicer was a mortgage servicer and sub-servicer headquartered in Oregon.

<u>The Short Sale Process</u>

2.      A "mortgage lending business" is an organization which finances or refinances any debt secured by an interest in real estate. 18 U.S.C. § 27.

3.      Mortgage loans are funded by mortgage lending businesses, like Victim GSE, to enable borrowers to finance the purchase of real property while giving the mortgage lending business a secured interest in the real property. Mortgage borrowers are required to make regular, typically monthly, payments to the lender to pay down the principal and interest owed on the mortgage loan.

4.      Borrowers who fail to make required mortgage payments are said to become "delinquent" or "in default." When a borrower is in default, and the terms of the mortgage allow, a mortgage lending business will often accelerate the mortgage loan on the real property that was used to secure the mortgage. When the mortgage loan is accelerated, the entire outstanding mortgage balance becomes immediately due and payable.

5.      Absent a "mortgage modification," where the lender agrees to adjust the borrowers' repayment schedule, delinquent borrowers who are unable to make their mortgage payments face foreclosure.

6.      "Foreclosure" is a legal process which allows the lender to pursue a civil action in court to take possession of the real property used to secure the mortgage loan, thereby recouping some or all of what the lender is owed, based upon the amount of equity in the real property at the time of foreclosure.

7.      Foreclosure can be a lengthy and expensive process for the lender, and so, in some cases, the lender will allow a delinquent borrower to pursue a "short sale" of the real property used to secure the mortgage loan as an alternative to foreclosure.

8.      A "short sale" is a type of real estate transaction in which a mortgaged property facing foreclosure is sold by the delinquent borrower to a third-party buyer in lieu of the property going to foreclosure. Because the lender forfeits the difference between the price obtained for the property in the short sale and the unpaid balance on the delinquent mortgage loan, the lender must approve any short sale of the property. If approved by the lender, the short sale purchase agreement between the delinquent borrower seller and the short sale buyer results in (i) the payment of the short sale price to the lender; (ii) the release of the lender's mortgage interest in the property; and, thereby, (iii) the extinguishment of the delinquent borrower's outstanding mortgage obligation to the lender.

9.      Because the lender takes a financial loss on the short sale and the delinquent borrower gains a financial benefit from the release of the borrower's mortgage obligation, short sale transactions contain legal protections for the lender, including, among others, that (i) the short sale is an arm's length transaction (meaning that the seller and buyer are not related by any family or business interests); and (ii) the seller will not be allowed to occupy the property after a certain period following the short sale (typically, sixty (60) or ninety (90) days). These protections are put in place, among other reasons, to prevent the delinquent borrower from extinguishing the borrower's original mortgage obligation while retaining actual possession of the property.

<u>Victim GSE's Mortgage on the Short Sale Property</u>

10.      On or about December 17, 2004, NATHANIEL ANDERSON's now ex-wife, obtained a mortgage loan from Bank-1 secured by the Property.

11.      On or about July 14, 2009, Bank-1 assigned the mortgage on the Property to Bank-2.

12.      NATHANIEL ANDERSON and his then wife, now ex-wife, failed to make required monthly payments on the mortgage, and, on or about October 1, 2009, Bank-2 accelerated the mortgage loan on the Property and declared the mortgage in default.

13.      On or about April 28, 2014, NATHANIEL ANDERSON and his ex-wife's divorce became final. The Marital Settlement Agreement executed as part of their divorce assigned all mortgage obligations on the Property and all benefits or obligations from the sale of the Property to NATHANIEL ANDERSON.

14.      Prior to the divorce, NATHANIEL ANDERSON resided at the Property with, among others, his ex-wife. After the divorce, NATHANIEL ANDERSON continued to reside at the Property.

15.      Bank-3 acquired Bank-2 by merger and thereby became the successor in interest to Bank-2's obligations and assets, including the mortgage on the Property. On or about March 12, 2015, Bank-3 filed a foreclosure action concerning the Property in the Superior Court of New Jersey, Chancery Division, Burlington County, naming NATHANIEL ANDERSON and his ex-wife as defendants. On or about April 13, 2015, Bank-3 assigned the mortgage on the Property to Victim GSE, who thereafter substituted into the foreclosure action against the Property. Victim GSE contracted with another company (the "Servicer") to act as the servicer of the mortgage on the Property. As relevant here, a servicer collects mortgage payments on a property and also receives applications for short sales on behalf of the lender.

The Conspiracy and Scheme to Defraud

16.     Sometime in or before 2015, NATHANIEL ANDERSON began devising a scheme to conduct a fraudulent short sale of the Property. The basic parts of the scheme, as evidenced by, among other things, NATHANIEL ANDERSON's actions, set forth below, were that NATHANIEL ANDERSON would find a friend or business associate to act as a straw buyer, who would obtain a new mortgage from a financial institution, in this case Victim Lender, and purchase the Property through the short sale, but allow NATHANIEL ANDERSON to continue living at the Property after the short sale. Any such arrangement would violate the terms of the short sale agreements with Victim GSE (through the Servicer) and render false the representations made to Victim GSE and Victim Lender in the agreements concerning the short sale and the granting of the new mortgage on the Property.

17.     For example, sometime around June 9, 2015, NATHANIEL ANDERSON contacted a friend to request that the friend act as a straw buyer and purchase the Property in a short sale. NATHANIEL ANDERSON asked the friend to purchase the Property but allow NATHANIEL ANDERSON to continue residing in the Property after the short sale and to thereafter consider selling the Property back to NATHANIEL ANDERSON once NATHANIEL ANDERSON's finances were in order. The friend did not agree to the proposed transaction.

18.     By way of further example, sometime around or before September 21, 2015, NATHANIEL ANDERSON contacted a real estate broker to request that the broker arrange a short sale of the Property wherein the short sale buyer would allow NATHANIEL ANDERSON to continue residing in the Property after the short sale. The broker explained to NATHANIEL ANDERSON that he could not arrange such a transaction because short sales are required to be arm's length transactions and short sale sellers are not permitted to reside in a property after the sale. The broker explained to NATHANIEL ANDERSON that there was no legal workaround these requirements. The broker refused to arrange the transaction.

19.     Despite this, NATHANIEL ANDERSON continued to seek a straw buyer, who would allow him to continue residing in the Property after the short sale.

20.     Sometime in or before October 2015, NATHANIEL ANDERSON contacted his business partner CHRISONE D. ANDERSON to request that she purchase the Property through a short sale. NATHANIEL ANDERSON's and CHRISONE D. ANDERSON's subsequent conduct shows that they agreed to substantially the same transaction that NATHANIEL ANDERSON had proposed to his friend and to the real estate broker: CHRISONE D. ANDERSON would

purchase the Property through a short sale as a straw buyer and allow NATHANIEL ANDERSON to continue to reside in the Property following the sale.

21.     NATHANIEL ANDERSON had been business partners with CHRISONE D. ANDERSON since at least as early as September 29, 2015, when a Certificate of Formation for a Limited Liability Company (the "LLC") was filed with the New Jersey Department of the Treasury, Division of Revenue and Enterprise Services. The Certificate named NATHANIEL ANDERSON and CHRISONE D. ANDERSON as members of the LLC and named CHRISONE D. ANDERSON as the registered agent. This business partnership between NATHANIEL ANDERSON and CHRISONE D. ANDERSON was entered into before NATHANIEL ANDERSON and CHRISONE D. ANDERSON entered into the short sale agreement with Victim GSE related to the Property.

22.     Between in or around October 2015 and April 2016, NATHANIEL ANDERSON and CHRISONE D. ANDERSON exchanged email communications concerning the short sale of the Property. These included multiple emails between NATHANIEL ANDERSON and CHRISONE D. ANDERSON in which NATHANIEL ANDERSON attached documents identifying himself as the seller of the Property.

23.     On October 27, 2015, the Superior Court of New Jersey entered a default judgement of foreclosure on the Property in favor of Victim GSE in the amount of approximately $350,000. The same day, NATHANIEL ANDERSON and CHRISONE D. ANDERSON executed a Real Estate Sales Contract for the Property to transfer the Property from NATHANIEL ANDERSON as the seller, to CHRISONE D. ANDERSON as the buyer.

24.     Between on or about October 27, 2015, and on or about April 13, 2016, NATHANIEL ANDERSON and CHRISONE D. ANDERSON executed multiple legal documents necessary for the short sale transaction on the Property to proceed. These documents contained false statements upon which Victim GSE relied in approving the short sale of the Property and on which Victim Lender relied in granting a new mortgage on the Property, which include the examples set forth below.

<u>NATHANIEL ANDERSON's and CHRISONE D. ANDERSON's False Statements to Victim GSE in Connection with the Short Sale</u>

25.     The short sale of the Property closed, subject to the approval of Victim GSE, on or about April 13, 2016.

26.     As part of the closing, on or about April 13, 2016, CHRISONE D. ANDERSON executed, among other documents, a Short Sale Affidavit which contained, among others, the following false representations:

- 10 -

    a. "the Seller(s), Buyer(s), Agent(s), and Facilitator do hereby represent, warrant and agree under the pains and penalties of perjury, to the best of each signatory's knowledge and belief, as follows: a. The sale of the property is an 'arm's length' transaction, between Seller(s) and Buyer(s) who are unrelated and unaffiliated by family, marriage or commercial enterprise;" and

    b. "There are no agreements, understandings or contracts between the Seller(s) and Buyer(s) that the Seller(s) will remain in the property as tenants or later obtain title or ownership of the property, except that the Seller(s) are permitted to remain as tenants in the property for a short term, as is common and customary in the market but no longer than ninety (90) days, in order to facilitate relocations unless prohibited by applicable law."

27.     These statements were false because the sale of the property was not an arm's length transaction — NATHANIEL ANDERSON and CHRISONE D. ANDERSON were business partners — and because, as evidenced by their conduct, there was an agreement and understanding between NATHANIEL ANDERSON and CHRISONE D. ANDERSON that NATHANIEL ANDERSON would continue to reside at the Property after the short sale.

28.     Also as part of the closing, on or about April 13, 2016, NATHANIEL ANDERSON and CHRISONE D. ANDERSON executed, among other documents, an American Land Title Association Settlement Statement setting forth and attesting to all of the payments and fees necessary for the closing of the short sale. These included payments to obtain clear title of the Property for the short sale.

29.     As part of the process for obtaining clear title of the Property, also on or about April 13, 2016, NATHANIEL ANDERSON executed, among other documents, an Affidavit of Title, which contained the following false representation:

    a. "After today, [NATHANIEL ANDERSON] will live at [an address other than the Property], Willingboro, NJ 08046."

30.     This statement was false because NATHANIEL ANDERSON continued to reside and intended to continue to reside at the Property following the short sale.

31.     Also on or about April 13, 2016, NATHANIEL ANDERSON and CHRISONE D. ANDERSON caused, among others, the Short Sale Affidavit and the Settlement Statement to be submitted to the Servicer for approval of the short sale. The Servicer conveyed these and other documents to Victim GSE, and, Victim GSE, relying upon the defendants' false representations, approved the short sale of the Property.  That approval was recorded in, among other documents, a letter dated on or about April 18, 2016.

32.     Had NATHANIEL ANDERSON and CHRISONE D. ANDERSON disclosed to the Servicer and Victim GSE that (i) there was a pre-existing business relationship between NATHANIEL ANDERSON and CHRISONE D. ANDERSON and/or (ii) NATHANIEL ANDERSON would continue to reside at the Property after the short sale, Victim GSE would not have approved the short sale of the Property.

33.     As a result of the fraudulent short sale, Victim GSE suffered a loss of approximately $122,162.48, reflecting, among other things, the amount of NATHANIEL ANDERSON's mortgage debt that was canceled as a result of the short sale.

### NATHANIEL ANDERSON's and CHRISONE D. ANDERSON's False Statements to Victim Lender in Connection with the New Mortgage

34.     As part of the short sale closing on April 13, 2016, Victim Lender extended a new mortgage on the Property to CHRISONE D. ANDERSON. CHRISONE D. ANDERSON used the money obtained from Victim Lender's mortgage loan to purchase the Property in the short sale.

35.     In order to obtain the new mortgage on the Property from Victim Lender, NATHANIEL ANDERSON and CHRISONE D. ANDERSON executed a number of sworn documents on which they made materially false representations, and CHRISONE D. ANDERSON caused those documents to be submitted to Victim Lender.

36.     On or about October 27, 2015, NATHANIEL ANDERSON and CHRISONE D. ANDERSON signed a notarized New Jersey Real Estate Contract agreeing that NATHANIEL ANDERSON (identified as the seller) would sell the Property to CHRISONE D. ANDERSON (identified as the buyer). In the Real Estate Contract, NATHANIEL ANDERSON and CHRISONE D. ANDERSON certified, among other things, that possession and occupancy of the Property would be given to CHRISONE D. ANDERSON at the closing and that the Property was not subject to any applicable tenancies. CHRISONE D. ANDERSON subsequently caused the Real Estate Contract and its addenda to be submitted to Victim Lender. On or about March 11, 2016, NATHANIEL ANDERSON and CHRISONE D. ANDERSON executed a Real Estate Certification, certifying that "the terms and conditions of the sales contract are true to the best of their knowledge and belief and that any other agreement entered into by any of the parties in connection with the real estate transaction is part of, or attached to, the sales agreement." CHRISONE D. ANDERSON subsequently caused the Real Estate Certification to be submitted to Victim Lender.

37.     The representations in the Real Estate Contract and Real Estate Certification were false because NATHANIEL ANDERSON and CHRISONE D. ANDERSON never intended for possession and occupancy of the Property to be

- 12 -

given to CHRISONE D. ANDERSON. They intended for NATHANIEL ANDERSON to remain in possession of and to continue occupying the Property.

38.     Also on March 11, 2016, CHRISONE D. ANDERSON executed a Federal Housing Administration ("FHA") Identity of Interest Certification, in which she certified, among other things that "I do not have a family or business relationship with the seller of the property I plan to purchase with the FHA financing I have applied for."

39.     This statement was false because CHRISONE D. ANDERSON had been business partners with NATHANIEL ANDERSON since at least the formation of the LLC on or about September 29, 2015.

40.     Additionally, as part of the closing, on or about April 13, 2016, CHRISONE D. ANDERSON executed an Occupancy Certification, swearing that:

> I[ ] will occupy the Property as my[ ] principal residence within 60 days after the date of closing as stated in the Mortgage or Deed of Trust I[ ] executed. I[ ] will continue to occupy the Property as my[ ] principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing.

41.     This statement was false because CHRISONE D. ANDERSON did not and never intended to occupy the Property as her principal residence, and instead continued to reside at her address from prior to the short sale in Marlton, New Jersey (the "Marlton Address").

42.     CHRISONE D. ANDERSON caused these and other documents containing false statements to be submitted to Victim Lender, and Victim Lender relied upon these documents in granting CHRISONE D. ANDERSON a $162,011.00 mortgage loan on the Property.

43.     Had NATHANIEL ANDERSON and CHRISONE D. ANDERSON disclosed to Victim Lender that (i) there was a pre-existing business relationship between NATHANIEL ANDERSON and CHRISONE D. ANDERSON and/or (ii) NATHANIEL ANDERSON would continue to reside at the Property and CHRISONE D. ANDERSON would not reside at the Property after the short sale, Victim Lender would not have originated the new mortgage on the Property.

44.     As a result of executing their scheme to defraud Victim Lender NATHANIEL ANDERSON and CHRISONE D. ANDERSON obtained money and property from Victim Lender in the form of the $162,011.00 mortgage loan.

<u>Wire Communications Transmitted in Interstate and Foreign Commerce as Part of
the Conspiracy and Scheme to Defraud</u>

45.     As noted above, for the purpose of executing the scheme to defraud and
in furtherance of the conspiracy, NATHANIEL ANDERSON and CHRISONE D.
ANDERSON transmitted wire communications in interstate and foreign commerce.

46.     For example, NATHANIEL ANDERSON and CHRISONE D.
ANDERSON coordinated the execution of documents necessary to the scheme via
email. On or about March 10, 2016, at approximately 3:01 p.m., NATHANIEL
ANDERSON's real estate agent sent NATHANIEL ANDERSON an email with the
subject line: "Attached: Addendum Modifying Mortgage Commitment and Closing
Dates." In the body of the email, the real estate agent wrote: "Nat – the attached
Addendum modifies the Closing Date as well as the Mortgage Commitment date.
Please print, sign, and return." A pdf of an Addendum to Agreement of Sale for the
Property was attached to the email.

47.     Minutes later, at approximately 3:15 p.m., NATHANIEL ANDERSON
forwarded the email and attachment to CHRISONE D. ANDERSON, writing "Here
you go[.]" Thereafter, at approximately 3:27 p.m., CHRISONE D. ANDERSON
responded "sent to Mr. [the name of the Senior Loan Officer at Victim Lender
handling CHRISONE D. ANDERSON's mortgage application.]"

48.     The email communications set forth in paragraphs 45 through 47
above were transmitted in interstate commerce.

<u>NATHANIEL ANDERSON's and CHRISONE D. ANDERSON's Conduct Following
the Short Sale</u>

49.     NATHANIEL ANDERSON and CHRISONE D. ANDERSON's conduct
surrounding and following the short sale demonstrated their intent and agreement
that NATHANIEL ANDERSON would continue to reside at the Property after the
Short Sale and that CHRISONE D. ANDERSON would not reside at the Property
after the short sale.

50.     On or about April 14, 2016 — the day after the short sale closing —
NATHANIEL ANDERSON received a blank Residential Lease Form from his
realtor. Just weeks later, on or about June 1, 2016, NATHANIEL ANDERSON and
CHRISONE D. ANDERSON executed a one-year lease of the Property from
CHRISONE D. ANDERSON back to NATHANIEL ANDERSON using the same
Residential Lease Form.

51.     After the short sale, NATHANIEL ANDERSON continued to reside at
the Property. As of the date of this Complaint, NATHANIEL ANDERSON still
resides at the Property.

52.    Bank records indicate that NATHANIEL ANDERSON made the mortgage payments on the Property from in or about June 2016 through March 2017. During this same period, from in or about May 2016 through in or about June 2017, NATHANIEL ANDERSON also paid the cable bill and electric and gas utility bills for the Property. CHRISONE D. ANDERSON did not make any mortgage payments, nor did she pay any cable, gas, or electric utility bills for the Property.

53.    After the short sale, CHRSIONE D. ANDERSON did not reside at the Property. Instead, CHRISONE D. ANDERSON continued to reside at the Marlton Address, her address from prior to the short sale.

54.    On or about April 27, 2016, CHRISONE D. ANDERSON renewed her New Jersey nursing license using her Marlton Address.

55.    On or about May 11, 2016, CHRISONE D. ANDERSON renewed her lease for the Marlton Address, naming herself as the sole intended occupant of the Marlton Address.

The Sale of the Property to NATHANIEL ANDERSON's Fiancée

56.    On February 24, 2017, NATHANIEL ANDERSON emailed CHRISONE D. ANDERSON an Agreement for the Sale of Real Estate, agreeing to sell the Property to NATHANIEL ANDERSON's then fiancée, writing "Please sign and scan back to me."

57.    On June 6, 2017, the sale of the Property from CHRISONE D. ANDERSON to NATHANIEL ANDERSON's fiancée closed. Law enforcement obtained a May 8, 2017 "Gift Letter" executed by NATHANIEL ANDERSON as donor, in which he certified that he was giving his fiancée a gift of $13,000 towards her purchase of the Property from CHRISONE D. ANDERSON. Law enforcement also obtained a corresponding copy of the check from NATHANIEL ANDERSON payable to his fiancée in the amount of $13,000.

CHRISONE D. ANDERSON's False Statements to the FBI

58.    On or about May 20, 2022, CHRISONE D. ANDERSON, represented by counsel, sat for an interview with, among others, Special Agents of the FBI.

59.    During the course of that interview, CHRISONE D. ANDERSON made materially false statements to the FBI agents in connection with a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation into the fraudulent short sale transaction of the Property being conducted by the United States Department of Justice and the FBI.

60.    Those false statements, which were material to the FBI's investigation of the fraudulent short sale, included, but were not limited to the following:

a. CHRISONE D. ANDERSON stated that she did not believe that she had a business relationship with the seller of the Property because she did not consider NATHANIEL ANDERSON to be the seller, when, in fact, between October 27, 2015, and April 13, 2016, CHRISONE D. ANDERSON (i) executed multiple documents, including the October 27, 2015 Real Estate Sales Contract and the April 13, 2016 Settlement Statement for the Property which identified NATHANIEL ANDERSON as the or a seller of the Property and (ii) communicated directly with NATHANIEL ANDERSON via email as the seller of the Property.

b. CHRISONE D. ANDERSON stated that during the period that she owned the Property, she considered the Property to be her primary residence and she resided at the Property on weekdays, when, in fact, CHRISONE D. ANDERSON never resided at the Property as her primary residence and continued to reside at the Marlton Address, the same residence in which she resided prior to the short sale.